# EXHIBIT A

# STATE COURT COMPLAINT

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
MONROE COUNTY, GEORGIA

**SUCV2022000057**

FEB 07, 2022 08:53 AM

Lindsey Taylor, Clerk
Monroe County, Georgia

# IN THE SUPERIOR COURT OF MONROE COUNTY
# STATE OF GEORGIA

| | | |
|---|---|---|
| JUDDIE SANDS, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| vs. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GEORGIA POWER COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Juddie Sands and files this Complaint for personal damages that she has incurred as a result of Defendant Georgia Power Company's operations at Robert W. Scherer Electric Generating Plant ("Plant Scherer"), the most powerful coal-fired power plant in North America, which is located in Plaintiff's backyard.

## INTRODUCTION

1. This action for damages arises out of Georgia Power Company's prior and continuing release, discharge, and deposit of toxins into the groundwater and air that has caused extreme personal damage to Plaintiff.

2. Georgia Power unlawfully discharges toxins from coal ash into the air and an unlined pond located at Plant Scherer, which leads to the release and migration of pollutants into the groundwater and air on the property where Plaintiff lives.

## PARTIES

3. Juddie Sands is, and was at all times relevant, a citizen of the state of Georgia, residing at 30 Bowdoin Road, Juliette, Georgia 31046 (Monroe County).

4. At all times relevant, Steven Stowe, Jr. had a possessory interest in the property where she lives, 30 Bowdoin Road, Juliette, Georgia 31046 (Monroe County).

5. Georgia Power Company is a corporation formed under the laws of the State of Georgia, and whose principal office address is 241 Ralph McGill Boulevard NE, Atlanta, Fulton County, Georgia 30308.

6. Georgia Power has owned and operated Plant Scherer located at 10986 GA-87, Juliette, Georgia 31046 (Monroe County) during all times relevant to the matters described and claims asserted in this Complaint.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this action and has personal jurisdiction over Defendant in this action.

8. Venue is proper in this Court.

## FACTUAL BACKGROUND

### Plant Scherer

9. Georgia Power owns and operates Plant Scherer, a 12,000-acre coal-fired power plant located in Juliette, Georgia.

10. Plant Scherer is named after Robert W. Scherer, a former chairman and chief executive officer of Georgia Power.

11. Plant Scherer consists of four units, each with a rated capacity of 945 megawatts.

12. The first unit was brought online in 1982. The other units were brought online in 1984, 1987, and 1989, respectively.

13. Plant Scherer is the most powerful coal-fired power plant in North America. It is the fourth-largest electric generating plant in the United States, and the largest to be fueled exclusively by coal, according to the U.S. Energy Information Administration.

14. According to the U.S. Environmental Protection Agency, Plant Scherer is the top single emitter of Greenhouse Gas emissions among all United States power plants, averaging over 20 million tons per year through at least 2018.

15. Plant Scherer burns coal for the purpose of generating energy. Lake Juliette, a man-made lake built by Georgia Power, provides water to make steam, which generates the electricity. Coal is burned to heat the water into steam.

16. Georgia Power purchases coal for use at Plant Scherer from the Powder River Basin in Wyoming.

17. Coal from the Powder River Basin contains toxic elements. It is known in the industry as the cheapest and dirtiest coal available.

**Coal ash**

18. Georgia Power generates large quantities of coal ash when it burns coal to generate energy at Plant Scherer.

19. Coal ash, also referred to as coal combustion residuals or CCRs, is produced primarily from the burning of coal in coal-fired power plants. Coal ash includes a number of by-products produced from burning coal, including fly ash, bottom ash, boiler slag, and flue gas desulfurization material. This Complaint uses the term "coal ash" to refer to all the material mentioned in this paragraph.

20. Coal ash contains materials that are known carcinogens and neurotoxins.

21. The risks to humans associated with exposure to these toxins from coal ash include elevated probabilities of cancer, neurological and psychiatric effects, cardiovascular effects, immune system damage, liver damage, kidney damage, decreased thyroid function, birth defects, developmental disabilities, respiratory system effects, damage to blood vessels, anemia,

skin disorders, bone sarcomas, carcinomas of the paranasal sinuses and mastoid process, and other acute and chronic toxic reactions.

## Coal Ash Pond

22. Georgia Power disposes of Plant Scherer's coal ash in, among other places, a 776-acre pond located on the campus of Plant Scherer ("Coal Ash Pond").

23. The Coal Ash Pond is unlined and contains roughly 15.7 million tons of coal ash, much of which is located beneath the groundwater table, which is the area from which groundwater flows.

24. The Coal Ash Pond is located in close proximity to Plaintiff's residence.

25. Coal ash left in unlined basins, such as the Coal Ash Pond at Plant Scherer, is likely to leach toxins into the groundwater.

26. Coal ash has and continues to leach from the Coal Ash Pond.

27. This leaching occurs via groundwater infiltrating the unlined basin of the Coal Ash Pond. The groundwater flow carries the toxins from the coal ash to the groundwater and air on the property where Plaintiff lives.

## The location of Georgia Power's monitoring wells evades representative results

28. Georgia Power has set up various monitoring wells supposedly to monitor water conditions as a result of the operation of Plant Scherer, including the use of the Coal Ash Pond. But the locations of these wells and the depth of the well screens are insufficient to properly monitor contaminants leaching from the unlined Coal Ash Pond to the groundwater.

29. The monitoring wells are located horizontally adjacent to the Coal Ash Pond, but groundwater flow is vertical from the Coal Ash Pond to the bedrock aquifer, which is the

underground rock through which groundwater travels to reach streams, lakes, rivers, and Plaintiff's well.

30. The monitoring well screens, which are filters that allow water to enter the pipes, are placed above the bedrock aquifer. Thus, they are not within the flow from the Coal Ash Pond.

31. Well screens would need to be located below 380 feet mean sea level (MSL) to properly detect groundwater contaminant plumes generated by toxins leaching from the Coal Ash Pond. All of Georgia Power's well screens are above the minimum elevation of 380 MSL.

### Contamination of Plaintiff's water and air

32. Since the inception of Plant Scherer and the Coal Ash Pond, and continuing today, Georgia Power has owned and operated Plant Scherer in such a negligent, reckless, and otherwise unlawful manner so as to allow, through their acts and omissions, the discharge, release, seepage, deposit, and emission of toxins into Plaintiff's well water, air, and otherwise onto the property where Plaintiff lives.

33. Georgia Power has and continues to unlawfully release, discharge, and deposit toxins from the Coal Ash Pond at Plant Scherer into the local well water used by Plaintiff and/or onto the property where Plaintiff lives.

34. Georgia Power's operation of Plant Scherer creates harmful air emissions of toxins that impact residents in Juliette and Forsyth, Georgia (including Plaintiff) through inhalation and contamination by shallow soil deposits during rain events.

35. Unsafe levels of toxins from Plant Scherer are present in the Plaintiff's well water.

36. The detected toxins in the well water are the result of contamination from Georgia Power operations at Plant Scherer

37. Plaintiff obtained her drinking water from the groundwater well on the property where she lives where unsafe levels of contaminants are found. Plaintiff also used water from that well to cook, clean, water her garden and lawn, and in other household activities.

38. Plaintiff has been exposed, and continues to be exposed, to the toxins created by Georgia Power's operations at Plant Scherer.

39. Georgia Power provided Plaintiff no warning that activity from Plant Scherer and the existence of the unlined Coal Ash Pond regularly exposed, and continue to expose, Plaintiff to toxic substances.

40. In fact, Georgia Power has made affirmative statements that the operations at Plant Scherer and its use of the Coal Ash Pond do not pose any danger to Plaintiff or any resident living near Plant Scherer.

41. Georgia Power has made affirmative statements that the operations at Plant Scherer do not affect the groundwater of Juliette residents.

42. The release, discharge, and deposits of toxins into the environment and onto the property where Plaintiff lives was foreseeable and preventable. Georgia Power knowingly released, discharged, and deposited toxins into the environment and was aware that in so doing, it was likely injuring local residents, such as Plaintiff.

43. The discharges, releases, and deposits caused by the acts and omissions of Georgia Power have caused Plaintiff, her well water, and her residence to be exposed to highly toxic and hazardous coal ash and have caused damage to the natural resources and environment

in and around Plaintiff's residence, thereby causing Plaintiff to incur health injuries, pain and suffering, loss of quality of life, and other damages.

44. As a result of Georgia Power's releases, discharges, and deposits of toxic and hazardous substances into the areas surrounding Plant Scherer, Plaintiff has suffered injuries to her person.

45. Plaintiff suffers from pulmonary fibrosis and chronic lung disease, among other personal injuries.

## COUNT I – NEGLIGENCE

46. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

47. Defendant was negligent as a landowner by adulterating groundwater through the disposal of toxic and hazardous materials and other Plant Scherer operations so as to interfere with the enjoyment of groundwater and air by others, including Plaintiff.

48. Defendant was and is negligent in the method by which it disposes of coal ash at Plant Scherer.

49. Defendant was negligent in the construction of the Coal Ash Pond by failing to install a liner in spite of the significant known risk that left unlined, the Coal Ash Pond could release, discharge, and deposit pollutants through groundwater running beneath or through Plant Scherer to other landowners and residents, such as Plaintiff.

50. Defendant was negligent in the use and maintenance of the Coal Ash Pond by dumping millions of tons of coal ash there and causing the toxic concentration of leachate that far exceeds safe levels.

51. Defendant was and is negligent in the maintenance of the Coal Ash Pond by allowing significant discharge of coal ash pollutants therefrom into the groundwater and air located in the vicinity of Plant Scherer.

52. Defendant knew or should have known that its activities would have toxic, poisonous, and highly deleterious effects upon the health of persons inhaling, ingesting, or otherwise absorbing the waste generated at Plant Scherer.

53. Defendant breached its duty to Plaintiff by disposing of toxic materials in the unlined Coal Ash Pond and allowing toxic and hazardous material to contaminate the natural resources of nearby residents, which Defendant knew, or should have known, would foreseeably cause Plaintiff to come into contact with, or otherwise be exposed to, the toxic substances.

54. Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed by the toxic materials.

55. Defendant recklessly and negligently failed to fully and properly test, analyze, and study the constituents of the coal ash and other toxins so as to fully understand the health hazards associated with disposing these materials in the unlined Coal Ash Pond.

56. Defendant, as property owner and operator of Plant Scherer, has a duty to use its land in a manner that does not injure others.

57. Defendant has breached this duty by failing to maintain the property at Plant Scherer in a manner that would not result in ongoing damage to Plaintiff.

58. Defendant has breached this duty by failing to manage pollutant discharges and other toxins in a manner that does not cause damage to Plaintiff.

59. Defendant's failure to maintain its property and its actions and/or omissions in the course of the operation, maintenance, development, and/or construction activities at Plant Scherer has resulted in the severe adulteration and degradation of waters which flow onto the property where Plaintiff lives.

60. Defendant's activities as alleged herein are a cause in fact and a proximate cause of the damages that Plaintiff has suffered.

61. As a result of Defendant's negligence, Plaintiff has suffered personal damages, including but not limited to damages to her health.

62. As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses. Plaintiff's total special damages are in an amount to be proven at trial.

**COUNT II – NEGLIGENT FAILURE TO WARN**

63. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

64. At all times relevant to the matters described herein, Defendant has owned, operated, and exercised exclusive control over the operations of Plant Scherer.

65. Defendant's operation of Plant Scherer includes the generation of large quantities of coal ash, which contain toxins that pose significant dangers and risks to human health, including Plaintiff's health.

66. Defendant knew or should have known that disposal of large quantities of coal ash in the Coal Ash Pond, which remains unlined to date, would leach toxins into the groundwater where Plaintiff obtained her drinking water from the private groundwater well on the property where she resides.

67. Given the likelihood of contamination arising from Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond, Defendant had a duty to investigate the extent of the discharge, release, seepage, deposit, and emission of pollutants into Plaintiff's groundwater and warn Plaintiff of such toxic exposures.

68. At all times relevant, unsafe levels of toxic contaminants were in Plaintiff's groundwater.

69. Defendant breached its duty to Plaintiff by providing no warnings that releases, discharges, and deposits from Plant Scherer and the Coal Ash Pond regularly exposed, and continue to expose, Plaintiff to toxins.

70. Any adequate warning would have minimized, reduced, and/or avoided the foreseeable and preventable risk of harm posed by Defendant's reckless and negligent creation and operation of Plant Scherer and the Coal Ash Pond.

71. If Defendant provided adequate warnings, Plaintiff could have taken necessary steps to prevent further harm and exposure to the unsafe levels of toxic contaminants found in Plaintiff's well and groundwater.

72. Defendant recklessly and negligently failed and/or refused to provide accurate and adequate warnings of the health hazards and dangers of exposure to coal ash and other toxins to Plaintiff who would reasonably and foreseeably come into contact with or be harmed by the toxins.

73. Defendant's failures, actions, and/or omissions at Plant Scherer and the Coal Ash Pond are a cause in fact and a proximate cause of Plaintiff's damages.

74. As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses. Plaintiff's total special damages are in an amount to be proven at trial.

### COUNT III – NUISANCE

75. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

76. The dumping of coal ash and other operations at Plant Scherer have resulted in discharges of toxins into the area surrounding Plant Scherer, including the groundwater, Plaintiff's well water, and the air.

77. These discharges have resulted and continue to result in the contamination and accumulation of toxins on the property where Plaintiff resides.

78. As a result, Plaintiff has suffered injuries to her person.

79. The ongoing discharges of pollutants have caused and are continuing to cause Plaintiff to suffer hurt, inconvenience, and/or damage within the meaning of O.C.G.A. § 41-1-1.

80. The ongoing discharges constitute a continuing abatable nuisance, pursuant to O.C.G.A. § 41-1-5, for which Defendant is responsible.

81. Because Defendant created the nuisance, Plaintiff is not required to give Defendant notice to abate the nuisance before filing this action.

82. The nuisance caused by Defendant is an actual and proximate cause of Plaintiff's damages and injuries.

83. Defendant's use and maintenance of Plant Scherer, as described above, constitutes a nuisance. It is injurious to Plaintiff's health.

84. As a proximate result of the nuisance created and maintained by Defendant, the Plaintiff has suffered personal damages in an amount to be determined at trial.

85. As a proximate result of the nuisance created by Defendant, Plaintiff has suffered physical injury and extreme mental anguish and had to be placed under the care of physicians. Plaintiff has suffered damages in an amount to be determined by proof at trial.

86. As a proximate result of the nuisance created by Defendant, Plaintiff was required to obtain medical services and treatment in an amount to be determined by proof at trial and will, in the future, be compelled to incur additional obligations for medical treatment in an amount to be determined by proof at trial.

87. As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses. Plaintiff's total special damages are in an amount to be proven at trial.

**COUNT IV – TRESPASS**

88. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

89. Plaintiff has a possessory interest in the property where Plaintiff lives, 30 Bowdoin Road, Juliette, Georgia 31046 (Monroe County).

90. The failure by Defendant to properly construct and maintain the Coal Ash Pond and Defendant's creation and operation of Plant Scherer have caused coal ash pollutants and other toxins to enter the property where Plaintiff lives.

91. The unpermitted invasions of the property where Plaintiff lives has resulted in the deterioration of the air and well water located thereon.

92. Plaintiff (nor anyone else) neither invited nor authorized Defendant's discharge of pollutants onto, over, and through the property where Plaintiff lives.

93. Defendant's ongoing discharges of pollutants on the property where Plaintiff lives has interfered with Plaintiff's right to use of her property without interference, and constitutes trespass.

94. As a result of these trespasses, Plaintiff has suffered personal damages in an amount to be proven at trial.

95. As a result of Defendant's foregoing acts and omissions, Plaintiff has incurred (and continues to incur) special damages, including medical expenses. Plaintiff's total special damages are in an amount to be proven at trial.

**COUNT V – ATTORNEY'S FEES AND COSTS**

96. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

97. Pursuant to O.C.G.A. § 13-6-11, Defendant has acted in bad faith, has been stubbornly litigious, and/or has caused the Plaintiff unnecessary trouble and expense, for which Plaintiff is entitled to recover her expenses of litigation, including reasonable attorney's fees and expenses, from Defendant.

98. Because Defendant has failed and refused to abate the unlawful conditions on the property where Plaintiff lives, Plaintiff was forced to incur attorney's fees and expenses in an effort to resolve this matter. Plaintiff will be forced to incur additional attorney's fees and expenses unless and until Defendant ceases and abates its unlawful and illegal use, occupation, and possession of the property where Plaintiff lives.

## COUNT VI – PUNITIVE DAMAGES

99. Plaintiff adopts and incorporates the preceding paragraphs above as if fully restated herein.

100. Defendant knew of the defects in and its defective maintenance of the Coal Ash Pond, but willfully ignored them, concealed them from Plaintiff, and failed to warn Plaintiff about the scope of the defects, intentionally and willingly exposing Plaintiff to toxic materials.

101. Defendant made false and/or reckless statements about the Coal Ash Pond, including denying that the toxic materials were leaching onto the property where Plaintiff lives and into Plaintiff's well water with the specific intent to induce Plaintiff to refrain from taking action requiring Defendant to remediate the problem.

102. Defendant's fraudulent and malicious behavior towards Plaintiff constitutes a pattern of bad faith conduct wherein to make money and avoid lawsuits, Defendant deliberately conceals the known hazard its operation presents to residents in the surrounding area, such as unmitigated pollution of the property where Plaintiff lives and the well water located thereon.

103. The actions and inactions of Defendant demonstrates willful misconduct, failure to warn, collusion, fraudulent concealment, malice, fraud, fraudulent inducement, wantonness, oppression, or that entire want of care that would raise the presumption of a conscious indifference to consequences, for which Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1.

104. The actions and inactions of Defendant demonstrates a specific intent to cause the intended harm authorizing punitive damages in excess of $250,000 pursuant to O.C.G.A. § 51-12-5.1.

**WHEREFORE**, Plaintiff prays for the following relief against Georgia Power:

a. General and special damages for current and ongoing personal injuries;

b. Punitive damages in excess of $250,000;

c. Trial by jury with respect to all issues triable to a jury;

d. All costs and attorney's fees associated with the prosecution of this action;

e. Interest on the judgment at the maximum rate allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Respectfully submitted, this 7th day of February 2022.

**STACEY EVANS LAW**

**/s/ Stacey Godfrey Evans**
Stacey Godfrey Evans
Georgia Bar No. 298555
Tiffany N. Watkins
Georgia Bar No. 228805
John Amble Johnson
Georgia Bar No. 229112

4200 Northside Parkway, NW
Bldg One; Suite 200
Atlanta, Georgia 30327
Telephone: 770-779-9602
Facsimile:  404-393-2828
sevans@staceyevanslaw.com
twatkins@staceyevanslaw.com
ajohnson@staceyevanslaw.com

**ADAMS LAW FIRM**

**/s/ Brian P. Adams**
Brian P. Adams
Georgia Bar No. 142474
Mary Beth Hand
Georgia Bar No. 322836

598 D.T. Walton Sr. Way
Macon, GA 31201
Telephone: 478-238-0231
Facsimile: 478-216-9188
brian@brianadamslaw.com
mbhand@brianadamslaw.com

**CONLEY GRIGGS PARTIN LLP**

**/s/ Cale H. Conley**
Cale H. Conley
Georgia Bar No. 181080
James T. Cox
Georgia Bar No. 296191

4200 Northside Parkway, N.W.
Building One, Suite 300

Atlanta, Georgia 30327-3007
Phone: 404-467-1155
Fax: 404-467-1166
cale@conleygriggs.com
james@conleygriggs.com

*Counsel for Plaintiff*